UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RAFAEL LEER,

                              Plaintiff,

               -v-                                   13-CV-8529 (JPO)

N.Y.S. DOCCS BRIANT FISHER, SGT. FISHER,    OPINION AND ORDER
SGT. RICHARD A. MOSS, C.O. MANEL
MARMOLEJOS, C.O. FRANCISCO
CARABALLO, C.O. ENRIQUE MALDONADO,

                              Defendants.
------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

       Plaintiff Rafael Leer ("Leer" or "Plaintiff"), proceeding pro se, brings this action alleging that he was subjected to excessive force while he was in custody at the Sing Sing Correctional Facility ("Sing Sing"). Leer's lawsuit names Sergeant Fisher, Sergeant Richard A. Moss, and Correction Officers Man[u]el Marmolejos, Francisco Caraballo, and Enrique Maldonado, who are alleged to be personally responsible for Leer's injuries, along with Brian Fischer (sued here as "Briant Fisher"), who at the time was the Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS"). Defendants move to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Leer requests that the Court assign him pro bono counsel and enter a default against Defendants. He also asks permission to amend his complaint. For the reasons that follow, Defendants' motion is granted in part and denied in part; Leer's requests for pro bono counsel and entry of default are denied; and Leer's motion for leave to file a second amended complaint is denied as moot.

I.   Background[1]

    A.   Facts

According to the amended complaint, Leer was in custody at Sing Sing on April 14, 2011. (Dkt. No. 25 ("Am. Compl."), at 2.) At 8:45 a.m. that morning, Defendant Sergeant Moss escorted Leer to get medication. Because Leer was talking, he received a "ticket" and Defendant Sergeant Fisher came with four other correction officers and began to "kick and punch" Leer. (*Id.*) Leer was also hit in the face and other parts of his body by a correction officer using brass knuckles. (*Id.* at 2-3.) Leer was beaten while on the way to the hospital (or perhaps the infirmary). (*Id.* at 3.) While Leer was in the emergency room, Fisher made Defendant Correction Officer Enrique Maldonado use brass knuckles, placed on his hand underneath a medical glove, to hit Leer in the face. (*Id.*) Nurses on staff screamed for Fisher and the officers to stop beating Leer "before they kill[ed him]," but Fisher told the nurses on staff to leave the emergency room. (*Id.*) There was "blood all over," Leer's body was bruised, and he "had to receive 10 stitches [on his] face." (*Id.*) Leer says that an officer named Lieutenant Mejia saw what was happening and told Defendants to stop. (*Id.*)

Several years after the incident, Leer says, he still experiences pain in his back, left shoulder, and the side of his face. (*Id.*) He takes medication for the pain and suffers from posttraumatic stress disorder. (*Id.*) Leer also takes medications for mental conditions due to the assault, and says that since that day he is "not the same person." (*Id.*) He seeks compensation for his injuries and pain and suffering in the amount of $5 million, jointly and severally against all of the defendants, along with punitive damages in the amount of $50,000, a declaration that his rights under the Constitution were violated, and his costs in this lawsuit. (*Id.* at 5-6.)

---

[1] The following facts are taken from the allegations in the amended complaint, which are accepted as true at this stage, and from other submissions in connection with the instant motion.

Leer insists that he filed grievances with the grievance office at Sing Sing to complain about the assault by correction officers. (*Id.* at 4.) The Inmate Grievance Resolution Committee claimed never to have received the grievance. (*Id.*) Leer also wrote to the Inspector General, the Attorney General's office, Internal Affairs, Department of Corrections Commissioner Brian Fischer, and the superintendent at Sing Sing. (*Id.*) Commissioner Fisher and the superintendent at Sing Sing also claimed not to have received the grievance. (*Id.*) Leer received a "tier 3 ticket"[2] for an assault on staff, but never had a hearing; he just was asked by a lieutenant to make a recording explaining what had happened.[3] (*Id.* at 4.) Leer said that he was released shortly afterward on April 29, 2011. (*Id.*) After Leer wrote to Commissioner Fischer about the grievance, he received a letter in February 2013 from an official named Karen Bellamy on Fischer's behalf, who said neither her office nor the Sing Sing grievance office knew anything about Leer's grievance. (*Id.* at 5.)

### B. Procedural History

Leer filed this action on November 26, 2013. (Dkt. Nos. 1-2.) The initial complaint stated that Leer's injuries were suffered on June 14, 2011, or June 14, 2010. (Dkt. No. 2, at 2-3.) After Defendants noted that Leer was not in DOCCS custody on June 14, 2011, and asserted that a claim from June 14, 2010, would be time barred (Dkt. No. 10), Leer filed letters stating, variously, that his injuries were in fact suffered on April 14, 16, or 26, 2011. (Dkt. Nos. 12, 15, 17.) The City responded that there was a use of force incident involving Leer on April 14, 2011, and named several officers who were involved. (Dkt. No. 18.) On April 7, 2014, Leer filed an

---

[2] "In the New York Prison System, Tier III disciplinary hearings, also known as Superintendent's hearings, are used for the review of the most serious violations of institutional rules." *Walker v. Bates*, 23 F.3d 652, 654 (2d Cir. 1994).

[3] In a subsequent paragraph, Leer says that he went to court, pleaded guilty, and "got six months," but that Marmolejos never went to court, and an appointed attorney violated his rights. (Am. Compl. at 5.)

amended complaint naming these officers. (Am. Compl.) Before the motion to dismiss was filed, Leer filed several letters in which he states that he attempted to exhaust his administrative remedies. (Dkt. Nos. 34-35, 37.) On June 19, 2014, Defendants moved to dismiss. (Dkt. No. 42.) Leer has opposed the motion in several filings. (Dkt. Nos. 60, 65-67.) On June 25, 2014, Leer requested permission to file a second amended complaint (Dkt. No. 50), and, on September 19, 2014, he also requested that the Court provide him with pro bono counsel (Dkt. No. 64). On November 6, 2014, Leer requested that the Court enter a default judgment. (Dkt. No. 68.)

## II.     Discussion

### A.     Legal Standard: Motion to Dismiss

On a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 392 (2d Cir. 2008) (internal quotation marks omitted). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court will not consider mere conclusory allegations that lack a factual basis. *Hayden v. Paterson*, 594 F.3d 150, 160-61 (2d Cir. 2010).

A complaint filed pro se "must be construed liberally to raise the strongest arguments it suggests." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (brackets and internal quotation marks omitted). "[A] *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (internal quotation marks omitted). However, a pro se litigant must nonetheless "plead

facts sufficient to state a claim to relief that is plausible on its face." *Teichmann v. New York*, 769 F.3d 821, 825 (2d Cir. 2014) (per curiam) (internal quotation marks omitted).

**B.     Exhaustion**

Pursuant to the Prison Litigation Reform Act ("PLRA"), an action regarding conditions in a correctional facility cannot be brought until the exhaustion of "such administrative remedies as are available."  42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  "The purpose of the PLRA is to reduce the quantity and improve the quality of prisoner suits and to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (alterations and internal quotation marks omitted).

"In order to exhaust a claim, prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Johnson v. Rowley*, 569 F.3d 40, 45 (2d Cir. 2009) (per curiam) (internal quotation marks omitted).  These rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

"Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador*, 655 F.3d at 96.  The "post-exhaustion amendment of pleadings filed originally before exhaustion to reflect that exhaustion has become complete cannot cure the original nonexhaustion defect," though "[d]ismissal is without prejudice, and the case may be refiled

5

once the plaintiff has exhausted his remedies." *Kasiem v. Switz*, 756 F. Supp. 2d 570, 575 (S.D.N.Y. 2010) (internal quotation marks omitted).

The Second Circuit has recognized three categories of "caveats" to the exhaustion requirement, however, where "(1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such [a] way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement." *Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (citing *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)).

"[F]ailure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. However, "if non-exhaustion is apparent from the face of the [complaint], a Rule 12(b)(6) motion is the proper vehicle to raise it as an affirmative defense." *Martin v. City of New York*, No. 11 Civ. 600 (PKC) (RLE), 2012 WL 1392648, at *5 (S.D.N.Y. Apr. 20, 2012) (internal quotation marks omitted). Exhaustion is not an appropriate basis for the dismissal of a complaint that simply "lack[s] specifics as to how the plaintiff grieved his claim," *Johnson v. Westchester Cnty. Dep't of Corr. Med. Dep't*, No. 10 Civ. 6309 (JGK), 2011 WL 2946168, at *2 (S.D.N.Y. July 19, 2011), or "is ambiguous on exhaustion," *Parris v. N.Y.S. Dep't of Corr. Servs.*, 947 F. Supp. 2d 354, 362 (S.D.N.Y. 2013).

In order to administratively exhaust their prison-related claims, New York state prisoners must comply with the DOCCS's Inmate Grievance Program ("IGP") process. *See Hilbert v. Fischer*, No. 12 Civ. 3843 (ER), 2013 WL 4774731, at *2-3 (S.D.N.Y. Sept. 5, 2013). The usual IGP process has three stages: "(1) the inmate submits a grievance to the Inmate Grievance Review Committee ('IGRC'), which comes to a determination on the grievance, (2) the inmate

may appeal the IGRC's determination to the facility superintend[e]nt, and (3) the inmate may appeal the superintend[e]nt's decision to the Central Office Review Committee ('CORC')." *Parris*, 947 F. Supp. 2d at 361 (citing N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5).

"DOCCS also provides an expedited procedure for grievances alleging harassment," which "includes 'employee misconduct meant to annoy, intimidate or harm an inmate.'" *Garcia v. Heath*, 12 Civ. 4695 (CM), 2013 WL 3237445, at *4 (S.D.N.Y. June 25, 2013) (quoting N.Y. Comp. Codes R. & Regs. tit. 7, § 701.2(e)). This expedited framework proceeds as follows:

> (1) The inmate must submit a formal grievance report and is encouraged, but not required, to report the incident to the immediate supervisor of the harassing DOCCS employee.
>
> (2) The IGRC is bypassed; the Superintendent must "promptly determine whether the grievance, if true, would represent a bona fide case of harassment." If so, the Superintendent must
> (1) initiate an in-house investigation by higher ranking personnel;
> (2) request an investigation by the Inspector General's Office; or
> (3) request an investigation by state police.
>
> (3) "Within 25 calendar days of receipt of the grievance, the Superintendent will render a decision on the grievance and transmit said decision, with reasons stated to the grievant, the grievance clerk, and any direct party of interest."
>
> (4) To appeal the Superintendent's decision to CORC, the prisoner must file a Notice of Decision to appeal with the inmate's grievance clerk within seven calendar days of receiving the decision.
>
> (5) If the Superintendent fails to respond within 25 days, the grievant may appeal his grievance to CORC directly.

*Id.* at *4 (citing N.Y. Comp. Codes R. & Regs., tit. 7, § 701.8) (internal citations omitted).

Here, it cannot be concluded from the face of the amended complaint alone that Leer failed to exhaust his administrative remedies. Leer alleges that he filed an initial grievance at Sing Sing and never received a response. (Am. Compl. at 4.) In response to a prompt asking about his "efforts to appeal to the highest level of the grievance process," Leer alleges that he

7

wrote to the superintendent at Sing Sing and a number of other officials and state departments. (*Id.* at 4-5.) While there is no explicit allegation that Leer appealed to the CORC, the complaint is ambiguous on this score. *See Parris*, 947 F. Supp. 2d at 361-62. Accordingly, the Court declines to dismiss the complaint: the PLRA (as interpreted in *Jones*) "does not require that the plaintiff demonstrate exhaustion in the complaint." *Pratt v. City of New York*, 929 F. Supp. 2d 314, 318 (S.D.N.Y. 2013) (citing *Jones*, 549 U.S. at 216).

Defendants also invite the Court to convert their motion to dismiss to a motion for summary judgment. "A district court has two options when presented with matters outside the pleadings in conjunction with a Rule 12(b)(6) motion: [1] the court may exclude the additional material and decide the motion on the complaint alone or [2] it may convert the motion to one for summary judgment under [Rule] 56 and afford all parties the opportunity to present supporting material." *Parris*, 947 F. Supp. 2d at 362 (alterations in original) (internal quotation marks omitted). Defendants ask the Court to consider materials outside the complaint that, they assert, show that Leer failed to exhaust his administrative remedies.

The Court declines to convert the motion to dismiss into a motion for summary judgment, and thus does not consider those materials. An opportunity for further factual development may allow Leer to demonstrate that he either did exhaust his administrative remedies or should be excused from the exhaustion requirement for one of the reasons set out by the Second Circuit in *Hemphill v. New York*: *i.e.*, that "(a) administrative remedies were unavailable, (b) he was inhibited from exhausting available remedies by [Defendants'] actions, or (c) special circumstances exist that justify his failure to comply with the exhaustion requirements." *Smalls v. Jummonte*, No. 08 Civ. 4367 (DAB), 2010 WL 3291587, at *3 (S.D.N.Y. Aug. 13, 2010).[4]

---

[4] "While the Second Circuit has left unresolved the continuing vitality of the *Hemphill* exceptions in light of the Supreme Court's ruling in *Woodford v. Ngo*, *Hemphill* remains good

Accordingly, the motion to dismiss for failure to exhaust is denied.[5] After the filing of Defendants' answer, the Court will refer this case to Magistrate Judge Ronald L. Ellis for discovery limited to the issue of administrative exhaustion. After such a limited period of discovery, to be determined by Judge Ellis, Defendants may submit a summary judgment motion on the issue of administrative exhaustion.

C. Sovereign Immunity

"The Eleventh Amendment bars the award of money damages against state officials in their official capacities." *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003). Defendants move to dismiss any damages claim against them in their official capacities. While it is not clear in what capacity (or capacities) Leer has sued Defendants, his claims are barred by the Eleventh Amendment to the extent that they are damages claims against Defendants in their official capacities. *See Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) (ruling that claims for damages against individual DOCCS personnel in their official capacities were barred).

---

law, and the Court must therefore consider whether any exceptions apply to Plaintiff's failure to exhaust." *Rambert v. Mulkins*, No. 11 Civ. 7421 (KPF), 2014 WL 2440747, at *11 (S.D.N.Y. May 30, 2014) (citing *Amador*, 655 F.3d at 102).

[5] The Court also notes that, were the motion converted to one for summary judgment, the record may contain factual issues that the state has not addressed. In one of the documents Leer has filed in response to the motion, he may indicate that he attempted to appeal to the CORC but was hindered from doing so. (*See* Dkt. No. 37, at 12.) In another document, Leer raises the third *Hemphill* exception for "special circumstances" justifying a failure to exhaust, though the factual grounds for this assertion are as yet unclear. (Dkt. No. 60, at 25.) In a note, Leer states that the grievance system "is not compli[ant] [with] Directive #4040," which covers the inmate grievance program. (*Id.* at 17.) Finally, Leer states that he has been "targeted" and transferred repeatedly. (*Id.* at 20.) "A prisoner may invoke the doctrine of estoppel when 'defendants took affirmative action to prevent him from availing himself of grievance procedures,'" and "[p]rior cases have held that verbal and physical threats of retaliation, physical assault, denial of grievance forms or writing implements, and transfers constitute such affirmative action." *Amador*, 655 F.3d at 103 (quoting *Ruggiero*, 467 F.3d at 178).

9

### D.  Pro Bono Counsel

Leer requests that the Court assign him pro bono counsel.  (Dkt. No. 64.)  Courts have "[b]road discretion" in deciding whether to grant a litigant's request for pro bono representation.  *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986).  In *Hodge*, the Second Circuit set forth the factors a court should consider in deciding whether to grant an indigent pro se plaintiff's request for pro bono counsel.  *Id.* at 60-62.  At the threshold, a court must determine that the plaintiff's claim "seems likely to be of substance" and has "some chance of success."  *Id.* at 60-61.  If so, the Court considers other criteria, including "plaintiff's ability to obtain representation independently, and his ability to handle the case without assistance in the light of the required factual investigation, the complexity of the legal issues, and the need for expertly conducted cross-examination to test veracity."  *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989) (per curiam).  The appointment of pro bono counsel must be made judiciously in order to preserve the "precious commodity" of volunteer lawyers for those litigants who truly need a lawyer's assistance.  *Id.*

Leer's previous request for the appointment of pro bono counsel, at an earlier stage of this case, was denied without prejudice.  (Dkt. No. 16.)  The Court concludes that it is still too early in the litigation to determine whether the appointment of counsel is warranted.  While the allegations of the complaint do not affirmatively demonstrate a lack of exhaustion, Leer's case is not yet out of the woods: if discovery reveals a failure to exhaust, a summary judgment motion may be made on this ground.  Accordingly, the request for pro bono counsel is denied without prejudice to renewal when the Court is better able to determine whether Leer's claim is likely to be of substance.

### E. Entry of Default

Leer has also filed a request for the entry of a default. (Dkt. No. 68.) Under Rule 55 of the Federal Rules of Civil Procedure, a default may be entered when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55. Here, however, Defendants have filed the instant motion to dismiss in response to the complaint. Because there is no ground for a default, the request is denied.

### F. Leave to Amend

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend should be granted "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Furthermore, a pro se complaint "should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (brackets and internal quotation marks omitted).

Leer moves for leave to amend his complaint, apparently in response to Defendants' motion to dismiss. (Dkt. No. 50.) Because the Court concludes that Leer has stated a valid claim to relief, there is no need for him to file a second amended complaint at this time. Leer's motion to amend the complaint is therefore denied as moot, although Leer may renew his motion to amend if he wishes to otherwise amend his pleadings.

## IV. Conclusion

For the foregoing reasons, it is hereby ORDERED that Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Plaintiff's claims remain in effect against Defendants in their individual capacities. Defendants shall answer the complaint by February 28, 2015.

Furthermore, Plaintiff's motion for leave to amend the complaint is DENIED as moot. Plaintiff's request for pro bono counsel is DENIED without prejudice, and Plaintiff's request for entry of default is DENIED.

Finally, the request of attorney Frederick Wen to be removed as counsel for Defendants (Dkt. No. 53) is GRANTED.

The Clerk of the Court is directed to terminate the motions at docket numbers 42, 50, and 64.

SO ORDERED.

Dated: February 2, 2015
New York, New York

_____
J. PAUL OETKEN
United States District Judge

COPY MAILED TO PRO SE PARTY